## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01856-MSK-BNB

GAIL WATERS, as personal representative of the Estate of Alonzo Ashley,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipality,
DENVER ZOOLOGICAL FOUNDATION, INC., a nonprofit corporation
ANDRE DERRITT, an employee of the Denver Zoological Foundation, in his individual capacity,
ERIC FLUEGEL, an employee of the Denver Zoological Foundation, in his individual capacity,
AARON LAWYER, an employee of the Denver Zoological Foundation, in his individual capacity,
JAMES TOTTEN, an employee of the Denver Zoological Foundation, in his individual capacity,
PHILIP COLEMAN, a Denver Police Department Officer, in his official and individual capacity,
PETE CONNER a Denver Police Department Lieutenant, in his official and individual capacity,
JOE GASCA, a Denver Police Department Officer, in his official and individual capacity,
JUSTIN JONES, a Denver Police Department Officer, in his official and individual capacity,
JOHN DOE I-V, employees of the Denver Police Department, in official and individual capacities; and
JOHN DOE VI-X, employees of Denver Zoological Foundation, in official and individual capacities,

      Defendants.

---

## DENVER DEFENDANTS' MOTION IN LIMINE

---

Defendants, **THE CITY AND COUNTY OF DENVER**, **PHILIP COLEMAN**, **PETE CONNER**, **JOEY GASCA**, and **JUSTIN JONES** ("the Denver Defendants"), by their undersigned attorneys, and pursuant to Fed. R. Civ. P. 26(a)(2) and 37(c)(1), hereby submit the following Motion *in Limine* to strike portions of expert opinions offered by Plaintiff for her experts Dan Montgomery and Dr. Judy Melinek in the parties' Joint Rule 702 Motion [Doc. #

130] and preclude both experts from offering such opinions because they were not properly disclosed.

**AS GROUNDS THEREFOR**, the Denver Defendants state:

## I.   CONFERRAL CERTIFICATION

Pursuant to D.C.COLO.RCivP 7.1A, defense counsel conferred with Plaintiff's counsel regarding the grounds for this motion and the relief requested herein. Plaintiff opposes the motion.   The Denver Defendants' counsel has also conferred with counsel for Defendants Denver Zoological Foundation, Andre Derritt, Eric Fluegel, Aaron Lawyer and James Totten (hereinafter "the Zoo Defendants").   Counsel for the Zoo Defendants does not object to the relief sought herein and joins in the portion of this Motion *in Limine* that addresses the opinions of Plaintiff's expert witness, Dr. Judy Melinek.

## II. INTRODUCTION

The parties have filed a joint Fed. R. Civ. P. 702 motion challenging the admissibility of the opinions of their respective expert witnesses.   [Doc. #130, Parties' Joint Motion Under Fed. R. Evid. 702, hereinafter "Rule 702 Motion."] In preparing the Rule 702 Motion, each party set forth the specific opinions of their respective experts, in accordance with this Court's procedures for Rule 702 motions.   However, Plaintiff's list of expert opinions for her experts Dan Montgomery and Dr. Judy Melinek includes new opinions that were not previously disclosed in Plaintiff's Fed. R. Civ. P. 26(a)(2) expert disclosure or in Plaintiff's experts' reports.   In fact, these new opinions even continued to evolve throughout the day on October 25, 2013 when the parties were completing the Rule 702 Motion for filing with the Court.   Although the Denver Defendants have objected to Plaintiff's experts' opinions in the Rule 702 motion in accordance

with this Court's requirements, the Denver Defendants believe that should the Court grant this Motion *in Limine,* the scope of the Rule 702 Motion will be substantially narrowed.   Therefore, the Denver Defendants request that the Court strike Dan Montgomery's Opinions 3 and 4, and Dr. Melinek's Opinions 5, 6, 7, 8, 9 and 10 as set forth  in the Rule 702 Motion, and that both experts be precluded from presenting opinions that were not properly disclosed under Rule 26.

### III. ARGUMENT

Rule 26(a)(2) requires the disclosure of a retained expert to be accompanied by a written report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. (a)(2)(B). The purpose of these disclosures is to "eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions, and trial." *Cook v. Rockwell Int'l Corp.*, 580 F.Supp.2d 1071, 1122 (D. Colo. 2006). When the requirements of Rule 26(a) are not met, the offending party is prohibited from using the witness unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). The burden of establishing that a failure to disclose was substantially justified rests on the nondisclosing party. *Mitchell v. Ford Motor Co.*, 318 Fed.Appx. 821, 824 (11th Cir. 2009).

Pursuant to the Scheduling Order, the deadline for designating expert witnesses was May 17, 2013 [Doc. # 73].   On that date, Plaintiff served her Fed.R.Civ.P. 26(a)(2) disclosures designating Dan Montgomery as a police practices expert and Dr. Melinek as an expert regarding forensic pathology and cause of death.  *See* Ex. 1, Plaintiff's Designation of Expert Witnesses. The disclosures did not include any actual opinions or summaries of opinions, but instead referred to the experts' reports.   While Plaintiff did provide a written report for Mr. Montgomery

at the time her disclosures were made, she failed to disclose a report for Dr. Melinek.  *See* Ex. 1 ("Plaintiff has not received Dr. Melinek's report and will supplement this disclosure upon its receipt."); *see also* Ex. 2, Montgomery's expert report.   Dr. Melinek's report was finally served on May 31, 2013.  *See* Ex. 3, Dr. Melinek's initial expert report.

The deadline for designating rebuttal expert witnesses and providing rebuttal reports was June 17, 2013.  [*See* Scheduling Order at Doc. # 73.]  Despite the untimely receipt of Dr. Melinek's report, Defendants timely served their rebuttal designations and reports.  However, Plaintiff did not serve any rebuttal designations or reports.   Instead, Plaintiff waited for almost two months before providing a supplemental report from Dr. Melinek.  *See* Ex. 4, Supplemental report of Dr. Melinek, dated August 14, 2013.[1]  The supplemental report did not address or rebut Defendants' medical expert.  Plaintiff has never provided a supplemental or rebuttal report from Mr. Montgomery.  Additionally, as more fully discussed below, Mr. Montgomery and Dr. Melinek were also deposed by defense counsel and neither expert expressed the newly offered opinions Plaintiff included in the Joint Rule 702 Motion.  The Court should preclude Plaintiff's experts from offering these undisclosed opinions.

A.     **Mr. Montgomery's Expert Opinions Numbers 2 and 3 Were Not Previously Disclosed**

In Opinion number 2, Mr. Montgomery opines about the alleged force used by Defendant Officer Philip Coleman.  In Opinion number 3, Mr. Montgomery opines about the alleged use of force and alleged improper supervision by Defendant Lieutenant Pete Conner.  None of these opinions were previously disclosed.

---

[1] The Defendants filed a joint motion to strike Dr. Melinek's supplemental report as untimely [Doc. # 110].  The Court denied the Motion, finding that Defendants were not prejudiced because Defendants had the opportunity to depose Dr. Melinek after the supplemental report was disclosed [Doc. #121].

1.    <u>Opinion number 2: Officer Coleman</u>

Mr. Montgomery's report is not critical of any specific police officer, but instead generally avers that, "In my professional opinion, the restraint techniques used by the defendants in this case were not appropriate and, were not in concert with law enforcement best practices." Ex. 2 at p. 23.  The report contains absolutely no opinions specific to Officer Coleman.  And at his deposition, the only opinion Mr. Montgomery had to offer regarding any alleged failure to act within best practices by Officer Coleman was that he used a Taser for two cycles:

> Q:    So I just want to make sure, going back to Coleman, other than the two tases, there's nothing else that you're claiming Officer Coleman did that was not within these nationally accepted police practices or tactics, correct?
>
> A:    Correct.

Ex. 7, Deposition of Dan Montgomery, 285:18-23; *see also* 253:6-14.

On October 15, 2013, during the conferral process for the Rule 702 Motion, Plaintiff's counsel provided a letter outlining the opinions Mr. Montgomery intends to offer at trial, which included the following opinions concerning Officer Coleman:

> Officer Coleman failed to act and respond to the incident at the Zoo on July 18, 2011 in a manner that meets industry standard for reasonable and acceptable force.  Officer Coleman failed to recognize and respond properly to Mr. Ashley's then displayed agitated state.  Officer Coleman exerted force on Mr. Ashley's torso and limbs which were not in concert with accepted practices regarding face down restraint.  Such actions were excessive and added to the likelihood of positional asphyxiation that ultimately lead to Mr. Ashley's death.

Ex. 5, October 16, 2013 Correspondence, p.2.  None of these opinions have ever been disclosed. As a result, counsel for the Denver Defendants contacted Plaintiff's counsel about these previously undisclosed opinions and requested that they be withdrawn.  In response, Plaintiff's

5

counsel agreed only to remove the phrase, "that ultimately lead to Mr. Ashley's death," claiming that Mr. Montgomery's opinions regarding Officer Coleman had been disclosed. *See* Ex. 6, October 25, 2013 correspondence. However, as noted above, Mr. Montgomery's report and deposition demonstrate otherwise.

In fact, the deposition excerpts cited in Plaintiff counsel's letter wholly fail to mention Officer Coleman. *See* Ex. 7 at 127:17-21 and 130:14-18 (excerpts from Mr. Montgomery's deposition discussing the conduct of another defendant, Denver Zoo employee James Totten); and 339:22-340:1 (referring to Mr. Montgomery's report and his opinion on Plaintiff's *Monell* claim). There is simply no prior expert disclosure, report, or deposition testimony by Mr. Montgomery alleging that Officer Coleman's actions were excessive, constituted improper face-down restraint, or added to the likelihood of positional asphyxiation.

2.     Opinion Number 3:  Lt. Conner

Plaintiff's counsel also sent the following previously-undisclosed opinions to Defendants' counsel for inclusion in the Rule 703 Motion:

> Lieutenant Conner failed to act and respond to the incident at the Zoo on July 18, 2011 in a manner that meets industry standard for reasonable and acceptable force.  Lieutenant Conner participated in the improper restraint techniques that lead to the ultimate death of Alonzo Ashley.  These techniques include, but are not limited to, face down restraint, pressure on Mr. Ashley's torso and limbs which lead to positional asphyxiation and contributed to the death of Alonzo Ashley.  Lieutenant Conner was the on-scene supervisor and failed to maintain a proper role as supervisor, as well as, failing to order the other responding officers to properly react to Mr. Ashley's condition.  Finally, Lieutenant Conner failed to call for medical personnel in a timely manner.

Ex. 5, p. 3.  Defendants' counsel requested the withdrawal of these previously-undisclosed opinions.  Plaintiff's counsel responded by stating that "After consideration and review of your

6

letter as well as Mr. Montgomery's report and deposition testimony, we agree to amend the offered opinion" as follows:

> Lt. Conner failed to respond and act within industry standard for reasonable and acceptable force regarding face-down restraint tactics, as well as failing to maintain a proper supervisory role that included, but is not limited to, the untimely calling for medical personnel.

*See* Ex.  6, p. 1.

Mr. Montgomery's expert designation, report and deposition testimony are also devoid of any opinion that Lt. Conner acted with excessive force, failed to use proper face-down restraint tactics, or failed to maintain a proper supervisory role.  Mr. Montgomery's expert report only makes conclusory and general allegations about the conduct of all officers, and the only reference to alleged improper supervision is the opinion that other officers were not properly supervised and trained on the use of Tasers by the City.  Mr. Montgomery has provided no opinion or testimony that Lt. Conner failed to maintain a proper supervisory role.   Indeed, Mr. Montgomery testified that his only criticism of Lt. Conner was his alleged failure to contact paramedics sooner:

> Q:     Okay, Chief, so we talked about your opinion that Lieutenant Conner, based upon your opinion of best practices, should have called the paramedics sooner, correct?
>
> A:     Yes.
>
> Q:     Even though you don't know what time he actually called the paramedics when he arrived on the scene?
>
> A:     Correct.

> Q:      Are you claiming there's any other or that Lieutenant Conner did not follow any other nationally accepted police practices and tactics with respect to –
>
> A:      My primary criticism of Lieutenant Conner is not making sure, as the ranking officer there, that paramedics were dispatched early in that process.
>
> Q:      Any other considerations?  You qualified it with primary. So I want to make sure that you're not saying that there's any other circumstances in which Lieutenant Conner did not follow nationally accepted police practices and tactics.
>
> A:      Not that I can think of at this time.

Ex. 7 at 307:10-308:7.

The Court should reject Plaintiff's attempt to disregard the disclosure rules and craft an opinion not actually provided by an expert.  Opinion Number 3 far exceeds the only opinion Mr. Montgomery ever expressed related to Lt. Conner (e.g. that he should have called for medical personnel sooner).  Neither Mr. Montgomery's report nor his deposition testimony includes any opinions regarding Lt. Conner's use of force or face-down restraint tactics.  And the newly offered opinion that Lt. Conner failed to "maintain a proper supervisory role that included, but is not limited to, the untimely calling for medical personnel" should be limited because no other alleged supervisory action has been disclosed.

Plaintiff claims that these newly offered opinions are supported by Mr. Montgomery's deposition testimony. However, the testimony cited by Plaintiff's counsel in his conferral letter does not support this position; indeed, the excerpts do not state any opinions whatsoever.  *See* Ex. 7 at 286:5-13 (questioning the fact that medical assistance was not requested sooner); 300:10-21 (stating facts about what Lt. Conner knew at the time of his arrival on the scene, and the fact that he placed a restraint on Mr. Ashley's right ankle [yet Mr. Montgomery testified in

the lines immediately prior to Plaintiff's cited excerpt that Lt. Conner did exactly what he should have done in assisting the other officers (299:15-300:9)]; 302:6-10 (stating that Lt. Conner assisted in handcuffing Mr. Ashley but not opining about that conduct); and 307:23-308:1 (criticizing Lt. Conner for not requesting medical assistance sooner).

> 3.       Plaintiff's failure to disclose the newly offered opinions by Dan
>                Montgomery  severely prejudices the Denver Defendants

Plaintiff's improper supplementation of Mr. Montgomery's opinions through the Rule 702 motion severely prejudices the Denver Defendants.  Mr. Montgomery's expert report was disclosed on May 17, 2013 and his deposition was taken on August 29, 2013.  Discovery is now closed and the Denver Defendants are unable to question Mr. Montgomery about these new opinions. Further, had these opinions been properly disclosed, Defendants would have had the opportunity to develop the case facts to challenge those opinions. They are completely unable to do that now. The Denver Defendants are also prejudiced because they are required to present a Rule 702 challenge to the new opinions which vary greatly from the testimony Mr. Montgomery has already given at his deposition.  A similar prejudice will be present should Mr. Montgomery be permitted to testify to these new opinions at trial.

Parties who provide inadequate expert reports and mere snippets of information act to their own peril.  *Gillum v. United States*, 309 F. App'x 267, 270 (10th Cir. 2009).  Accordingly, Mr. Montgomery's Opinions No. 2 and 3 should be excluded.

4.     **Dr. Melinek's Expert Opinions Numbers 5-10 Were Not Previously Disclosed.**

Dr. Melinek's Opinions 5, 6, 7, 8, 9 and 10 should be excluded.  These are also new opinions which were not disclosed in Dr. Melinek's Rule 26(a)(2) disclosure, her initial report or her supplemental report.

1.     Opinion No. 5: Sedation

Plaintiff's counsel originally drafted Dr. Melinek's Opinion No. 5 to address restraint and compression of the neck:

> The correct treatment of persons who suffer from Excited Delirium. In general, prolonged prone restraint should be avoided, as well as, compression from the torso and neck, as either of these can exacerbate physiologic stress. All Defendants listed above participated in the restraint of Mr. Ashley and therefore failed to correctly treat and respond to Mr. Ashley's condition.

Ex. 5, p. 2.  After the Denver Defendants' counsel requested the withdrawal of these opinions as not previously-disclosed, Plaintiff's counsel agreed to withdraw this opinion and substitute yet another entirely new opinion:

> After review and consideration of your objection and the transcript, a more accurate representation of Dr. Melinek's opinion is regarding excited delirium and its treatment and prevention, the general medical literature says if you find a way to sedate a person or treat them in a calm fashion, instead of antagonizing them and restraining them, you can sedate them and prevent death.

Ex. 8, October 25, 2013 correspondence from William Frankfurt, emphasis added.  Although this new opinion arises out of Plaintiff's counsel's review of Dr. Melinek's deposition, it was not disclosed or even discussed by Dr. Melinek in her initial or supplemental report.  Plaintiff's counsel revised the new opinion a second time on October 25, 2013, altering the statement that "general medical literature supports" sedation to "current general medical literature" supports

10

sedation.   *See* Ex. 9, October 25, 2013 email.  Regardless of how Plaintiff tries to craft or tailor this new opinion, it was not disclosed in Dr. Melinek's initial or supplemental reports as required by Rule 26(a)(2)(B).[2]

Although Dr. Melinek briefly discussed the use of sedation during her deposition in response to questioning from Defendants' counsel, Plaintiff should not be allowed to twist her answers into expert opinions that were not properly disclosed.  Dr. Melinek was asked during her deposition whether it was likely that Mr. Ashley would have died if there had been no struggle. Ex. 10, Deposition of Dr. Judy Melinek, 71:3-16.   In her response, Dr. Melinek described sedation as a potential alternative to struggling.  *Id.*   Plaintiff seeks to take advantage of this testimony and morph it into an actual expert opinion.

Doing so would mean that any deposition testimony provided by an expert could be interpreted as expert opinion, whether or not disclosed as required by Fed.R.Civ.P. 26(a)(2). Defendants would be prejudiced because they would be deprived of the opportunity to provide any rebuttal opinions to this testimony as well as being prohibited from any fact discovery necessary to investigate and impeach the opinion.   "The purpose of a detailed and complete expert report as contemplated by Rule 26(a) is, in part, to minimize the expense of deposing experts and to shorten direct examination and prevent an ambush at trial."  *Means v. Letcher*, 51 F. App'x 281, 282 (10th Cir. 2002) (internal citations omitted).  Because Dr. Melinek's Opinion No. 5 was never properly disclosed, the Court should exclude it.

---

[2] The words "sedation" and "sedate" do not even appear in either report.  *See* Exs. 3 and 4.

      2.      Opinion No. 6:  Whether Defendants' expert, Dr. Vilke, is qualified to sign death certificates

Dr. Melinek's Opinion No. 6 is another example of Plaintiff's improper attempt to alchemize a deposition excerpt into a full-blown undisclosed opinion.  In her deposition, Dr. Melinek was asked whether she believed Defendants' expert, Dr. Vilke, is an authority on the subjects listed in her bibliography.  Ex. 10, 211:24-212:21.   In her response, Dr. Melinek testified that she was "concerned about [Dr. Vilke's] authority with regards to determining things like cause of death because he is not a forensic pathologist," and that generally speaking, emergency physicians do not determine cause of death.  *Id.*   However, Dr. Melinek's expert witness disclosure, initial report and supplemental report contain no opinion regarding whether an emergency room physician is <u>qualified</u> to determine a decedent's cause of death.  Dr. Melinek had ample opportunity to disclose any opinions (if she actually had any) regarding Dr. Vilke's qualifications, as her initial report and supplemental report were both disclosed <u>after</u> Dr. Vilke's report was disclosed.  Moreover, Dr. Melinek had more than two weeks remaining after she disclosed her report in which she could have filed a rebuttal report.

The correspondence between counsel in the case reveals how Opinion No. 6 evolved.  Plaintiff originally drafted this opinion to state that "Only forensic pathologists are qualified to opine and determine the cause and manner of death."  Ex. 5.   Defendants' counsel requested the withdrawal of the opinion because it had never been previously disclosed.  The opinion was then modified by Plaintiff's counsel:

> After reviewing your objection and again considering the deposition transcript the opining [sic] offered here should be Emergency Room [sic] physicians generally do not determine the cause of death and do not sign death certificates.  Typically a

> forensic pathologist or underlying physician will determine the
> cause of death.

Ex. 8, p. 2.   And although this opinion more closely mirrored Dr. Melinek's deposition testimony, Plaintiff's counsel revised the opinion again to try to tailor it to this case.   After reviewing the draft Rule 702 Motion which included Defendants' objection to the then-current version of this opinion that the opinion was not specific to this case in violation of the Court's Practice Standard for Rule 702 Motions, Plaintiff's counsel responded:

> These are fine, *except*, I would amend Opinion #6 of Dr. Melinek to read: Dr. Vilke, as an emergency room physician, is not qualified to sign death certificates as to cause of death.

Ex. 11, October 25, 2013 email.   This opinion was not disclosed in Dr. Melinek's expert designation, her initial expert report, her supplemental report, any rebuttal report (none was submitted) or her deposition.   The Court should not allow Plaintiff to alchemize Dr. Melinek's statement regarding a "concern" she had about Dr. Vilke's authority to a full-blown opinion impugning Dr. Vilke's qualifications, especially because cause of death is a central issue in this case.   Allowing Plaintiff to testify about this previously-undisclosed opinion at trial would deprive Defendants of the opportunity to determine the bases for the opinion or Dr. Melinek's qualifications to render the opinion.   "This is precisely the type of prejudicial surprise that Rules 26 and 37 are designed to avoid."   *Daberkow v. United States*, 2008 WL 4755852, *5 (D. Colo. Oct. 29, 2008).

> 3.   Opinions 7, 8, 9 and 10: General medical opinions not previously disclosed

Plaintiff's October 25, 2013 correspondence at Ex. 8 confirms that the remainder of Dr. Melinek's proffered opinions were never disclosed as required by Fed.R.Civ.P. 26(a)(2).   After

Plaintiff's counsel provided Opinions 7-10 for inclusion in the Rule 702 Motion, Defendants' counsel requested the withdrawal of the opinions. Plaintiff's counsel rejected the request, arguing that the opinions were discussed during Dr. Melinek's deposition.[3] Ex. 8, pages 1-2. Plaintiff should not be allowed to pluck convenient excerpts from a deposition and convert them into expert opinions, as the excerpts do not come close to satisfying the requirements of Rule 26(a)(2). The deposition excerpts do not contain a complete statement of Dr. Melinek's bases and reasons for reaching the opinions, or all data and information considered by Dr. Melinek in reaching the opinions. Defendants should not be expected to explore the bases of every statement made by an expert in a deposition with the anticipation that every statement could become an expert opinion; to do so would lead to an absurd result and render the Rule 26(a)(2) report requirement moot.

## IV. CONCLUSION

Plaintiff should be precluded from presenting any previously undisclosed expert opinions, including Mr. Montgomery's Opinions No. 2 and 3, and Dr. Melinek's Opinions No. 5 through 10. Rule 37(c) states relevantly that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c).

---

[3] Plaintiff's counsel did agree to amend Opinion No. 10. As first proffered, the opinion stated that "Hyperkalemia alone is not an etiologically specific cause of death and is not acceptable as such on a death certificate." Following Defendants' counsel's request to withdraw the opinion, Plaintiff's counsel agreed to withdraw the phrase "and is not acceptable as such on a death certificate." *See* Exs. 5 and 8. Defendants maintain their objection that the first half of the opinion was never disclosed.

Here, there can be no dispute that Mr. Montgomery and Dr. Melinek's opinions at issue were not disclosed in their reports and are the product of Plaintiff's attempt to extract, morph and alchemize deposition testimony into expert opinions.  But Plaintiff's non-disclosure is not harmless.  Plaintiff had ample time and opportunity to disclose these new opinions pursuant to Rule 26(a)(2) but failed to do so, depriving Defendants of the opportunity to submit a rebuttal expert report in response to the new opinions or to explore the bases for the new opinions during the depositions.  Defendant had no fair notice of these new expert opinions until after the depositions were taken,  resulting in precisely the type of prejudicial surprise that Rules 26 are 37 are designed to avoid.

**WHEREFORE**, for all of the reasons set forth above, the Denver Defendants respectfully request that this Court enter orders as follows:

(a)     Striking Dr. Melinek's Opinions 5, 6, 7, 8, 9 and 10;

(b)     Striking Mr. Montgomery's Opinions 2 and 3;

(c)     Ordering that Dr. Melinek and Mr. Montgomery be precluded from presenting opinions not properly disclosed in their expert reports; and

(d)     Such further relief as the Court deems just and proper.

Respectfully submitted,

_____Jessica Allen_____
Wendy J. Shea, Assistant City Attorney
Jessica  Allen, Assistant City Attorney
Cristina Peña Helm, Assistant City Attorney
Office of the Denver City Attorney
 Litigation Section
210 W. Colfax Avenue, Dept. 1108

Denver, CO  80202
Telephone:  (720) 913-3112
Facsimile:   (720) 913-3182
E-mail:  wendy.shea@denvergov.org;
          jessica.allen@denvergov.org
          cristina.helm@denvergov.org

*Attorneys for the Denver Defendants*

## <u>CERTIFICATE OF SERVICE</u>

      **I HEREBY CERTIFY** that on this 30th day of October, 2013, I electronically filed the foregoing **DENVER DEFENDANTS' MOTION IN LIMINE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| William W. Frankfurt<br>wfrankfurt@comcast.net<br><br>Kevin Flesch<br>kevinflesch@hotmail.com<br><br>Eric M. Ziporin<br>eziporin@sgrllc.com<br><br>Monica N. Kovaci<br>mkovaci@sgrllc.com | Brett Marshall Godfrey<br>Godfrey@gojolaw.com<br><br>Julie Nicole Richards<br>Richards@gojolaw.com |

                                  *s/ Jessica Allen*
                               _____

00785211.DOC